UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|                          |   |                      |
|--------------------------|---|----------------------|
| JAMES GATES,             | ) |                      |
|                          | ) |                      |
|    Plaintiff, | ) |                      |
|                          | ) |                      |
| VS.                      | ) | No. 18-2388-JDT-cgc  |
|                          | ) |                      |
| CORECIVIC, ET AL.,       | ) |                      |
|                          | ) |                      |
|    Defendants. | ) |                      |

ORDER TO MODIFY THE DOCKET, DISMISSING COMPLAINT
AND GRANTING LEAVE TO AMEND

On June 7, 2018, Plaintiff James Gates, who currently is incarcerated at the Federal Correctional Institution (FCI) in Terre Haute, Indiana, filed a *pro se* complaint addressing events that allegedly occurred while Gates was a pretrial detainee at the West Tennessee Detention Facility (WTDF) in Mason, Tennessee, and at the FCI in Memphis, Tennessee. (ECF No. 1.) After Gates filed the financial documentation required under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b), the Court issued an order granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the PLRA. (ECF No. 7.) On August 28, 2018, Gates filed an amended complaint on the form for filing actions under 42 U.S.C. § 1983. (ECF No. 8.) The amended complaint appears to supplement, rather than supersede, Gates's original complaint.[1] Gates also filed a motion to supplement his complaint (ECF No. 5), which

---

[1] The amended complaint merely summarizes the claims in the original complaint. No new facts are alleged.

the Court granted. (ECF No. 11.) The Clerk shall record the Defendants as CoreCivic; the WTDF; First Name Unknown (FNU) Preston, WTDF Medical Administrator; WTDF Nurse Practitioner FNU Blue; WTDF Unit Manager FNU Waldell; FCI Memphis; Sheena Bailey, FNU Booker, D. Lacey-Barzar, Tori Holmes, S. Walton, and D. Dozier, RNs at FCI Memphis; FNU Macklin, FNU Jones, FNU Lawrence, and B. Delph, Corrections Officers (C/O) at FCI Memphis; FCI Memphis Lieutenant FNU Rodgers; FCI Memphis Nurse Practitioner Cynthia Gaia; and FCI Memphis Doctors Edna Prince and Vibeke Dankwa.[2] Gates sues the Defendants in their individual and official capacities. (ECF No. 1 at PageID 2-6.)

Gates alleges that he was a pretrial detainee at the WTDF until sometime in July 2017, when he was transferred to FCI Memphis, still as a detainee. (*Id.* at PageID 7-8.) At FCI Memphis, he was held in the Special Housing Unit (SHU), which he alleges imposed "a significant hardship on myself that inevitably effected [sic] my health." (*Id.* at PageID 7.)

Gates alleges his sciatic nerve "flared up" while he was at the WTDF and continued after his transfer to FCI Memphis. (*Id.* at PageID 8.) Gates alleges that he developed a blood clot in his left leg, which began to swell and cause severe pain, and nerve damage in his left arm. (*Id.* at PageID 8-9.) Gates alleges he filled out requests to see a doctor and told nurses and guards within the SHU about his condition, but "nothing was done." (*Id.* at PageID 9.) Gates alleges that the FCI Memphis "Medical Staff" told him he was "CCA's property" until he was sentenced in his criminal case and that nothing could be done in the meantime. (*Id.*) Gates alleges that he received

---

[2] Gates also seeks to sue a "Doctor Jane Doe" in his complaint. Service of process cannot be made on an unidentified party. The filing of a complaint against a "John/Jane Doe" Defendant does not toll the running of the statute of limitation against that party. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). The Clerk is DIRECTED to terminate the reference to Dr. Jane Doe on the docket.

no medical treatment for the next two and half months, during which time he developed the blood clot "and could have died." (*Id.*) He eventually received a shot at FCI Memphis that he alleges caused the nerve damage in his arm. (*Id.*)[3]

In the amended complaint, Gates names only CoreCivic and FCI Memphis as Defendants. (ECF No. 8 at PageID 222.) He alleges that, when he arrived at WTDF, he was given ibuprofen and x-rays to treat his sciatic nerve pain before he was transferred to FCI Memphis. (*Id.*) He alleges that at WTDF, he was "denied medical care on the scale that was really needed." (*Id.*) Once at FCI Memphis, Gates alleges, he told staff members about his condition but "was denied proper medical care" because he was still a pre-trial detainee. (*Id.*) He alleges that for the three-month period he was at FCI Memphis as a pretrial detainee, he was denied "proper medical attention, which resulted in his blood clotting, etc." (*Id.*)

In his initial complaint, Gates requests punitive damages of $100,000 from CoreCivic, the WTDF, and FCI Memphis; $20,000 from each FCI Memphis Nurse Practitioner and RN; $10,000 from each C/O; $50,000 from Lieutenant Rodgers; and $100,000 from the two doctors. (ECF No. 1 at PageID 10-13.) In his amended complaint, Gates increases his demand to $1 million in damages and requests that the Court impose an additional $250,000 fine on CoreCivic and FCI Memphis. (ECF No. 8 at PageID 224.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

---

[3] Gates in passing also states that he had limited access to grievance procedures. (ECF No. 1 at PageID 9.) He does not allege that any Defendant is responsible for his limited access. Moreover, a claim about the adequacy of grievance procedures is not cognizable under *Bivens* or § 1983. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001).

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

4

Because Gates's claims arose while he was incarcerated in federal prison facilities as a federal detainee, his claims cannot be brought under 42 U.S.C. § 1983, which applies only to deprivations of constitutional rights committed by a person acting under color of state law. Therefore, his claims arise, if at all, under *Bivens v. Six Unknown Fed. Agents, 403 U.S. 388 (1971).* *Bivens* provides a right of action against federal employees who violate an individual's rights under the United States Constitution. "Under the *Bivens* line of cases, the Supreme Court has recognized a cause of action against federal officials for certain constitutional violations when there are no alternative processes to protect the interests of the plaintiff and no special factors counseling against recognizing the cause of action." *Koubriti v. Convertino*, 593 F.3d 459, 466 (6th Cir. 2010).

Although Gates was a federal detainee when the events at the WTDF occurred, the WTDF is operated not by federal officials but by CoreCivic, a private prison corporation, and the WTDF Defendants in this case are alleged to be CoreCivic employees. The Supreme Court has held that a *Bivens* action may not be brought against private corporations that operate prison facilities housing federal detainees and convicted prisoners. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001). Therefore, Gates's claims against the WTDF and his official-capacity against the WTDF employees, all of which must be treated as having been brought against CoreCivic, fail to state a valid claim.

The Supreme Court also has declined to extend the *Bivens* remedy to actions brought against "privately employed personnel working at a privately operated federal prison" where the allegedly unconstitutional conduct "is of a kind that typically falls within the scope of traditional state tort law." *Minneci v. Pollard*, 565 U.S. 118, 131 (2012). The conduct Gates alleges falls

squarely within that description. Therefore, Gates also fails to state any valid individual capacity claim against the WTDF employees.

Gates's official capacity claims against the FCI Memphis employees are construed as against FCI Memphis and, in turn, the Federal Bureau of Prisons (BOP). A suit under *Bivens*, however, may be brought only against individual officers for certain constitutional violations. A prisoner "may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP." *Malesko*, 534 U.S. at 72. Gates therefore also fails to state a valid claim against FCI Memphis or any of its employees in their official capacities.

Most of Gates's remaining claims are stated broadly against "Medical Staff" or a group of Defendants (registered nurses, correctional officers, doctors). These collective allegations do not suffice to state a claim against any of the individual FCI Memphis Defendants. *See Twombly*, 550 U.S. at 570; *Gray v. Weber*, 244 F. App'x 753, 754 (8th Cir. 2007) (affirming dismissal of inmate's § 1983 complaint alleging denial of medical care against defendants identified "only collectively as 'medical staff'").

Gates's only specific allegations are against Lieutenant Rodgers and Nurse Gaia. Gates alleges that Rodgers supervises the C/Os, not the nurses or doctors, and that he "spoke to and asked to see [Rodgers] repeatedly and all he did was blow me off and do nothing." (ECF No. 1 at PageID 12.) Gates alleges that Rodgers "was aware of [Gates's] lack of mobility, swelling in leg/foot of which he witnessed with his own eyes," but Rodgers refused Gates's requests to see a doctor. (*Id.*)[4] Gates alleges that Gaia "repeatedly misdiagnosed" his medical condition "as my

---

[4] Gates also suggests that Rodgers's "behavior reflected that of a rascist [sic]." (ECF No. 1 at PageID 12.) Because he offers no facts to support that conclusion, the Court need not accept it as true. *See Iqbal*, 556 U.S. at 679.

health got worse." (*Id.*)  Gaia allegedly insisted that Gates did not have a blood clot and instructed a nurse to give Gates the shot that he alleges caused nerve damage in his arm.  (*Id.*)

Gates does not state a claim against Defendant Rodgers.  Gates does not allege that Rodgers himself is a medical provider or personally failed to treat him.  He alleges that Rodgers knew of his condition but does not allege that Rodgers also knew that he was receiving inadequate medical treatment.  Therefore, Gates at most alleges that Rodgers knew Gates had a medical issue but declined to get involved.  Moreover, Gates also does not allege that Rodgers supervised the Nurse Practitioner or RNs.  Rodgers cannot be held liable under *Bivens* for his role as a supervisor of the C/Os.  *See Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978) ("[T]he doctrine of respondeat superior cannot provide the basis for liability in a *Bivens* action.").  Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  A failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for liability under *Bivens*.  *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").  Rodgers's alleged inaction regarding the Nurse Practitioner or RNs at FCI Memphis does not suffice to hold him liable under *Bivens*.

Gates's allegations against Defendant Gaia amount to a claim of deliberate indifference to his medical needs.  "The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Winkler v. Madison Cnty.*, 893 F.3d 877,

890 (6th Cir. 2018) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008)). Like an Eighth Amendment claim, a Fourteenth Amendment claim of deliberate indifference has both an objective and a subjective component. *Id.* To satisfy the objective component, "the detainee must demonstrate the existence of a sufficiently serious medical need." *Id.* (quoting *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)). "For the subjective component, the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Id.* at 891 (quoting *Spears*, 589 F.3d at 254). A defendant has a sufficiently culpable state of mind if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Gates's sciatic nerve issue and blood clot unquestionably qualify as objectively serious. However, Gates's allegations do not satisfy the subjective component. Gates alleges that Defendant Gaia misdiagnosed him, delayed treatment until he was a convicted inmate, and then gave him a shot that he believes caused nerve damage in his arm. An inmate's disagreement about the course of treatment does not present a proper claim under § 1983. *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Moreover, Defendant Gaia's possible negligence or medical malpractice in her treatment of Gates does not amount to a constitutional violation. *See Farmer*, 511 U.S. at 835-36; *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Gates also alleges that, during the two and a half months he was a pretrial detainee at FCI Memphis, Defendant Gaia, the Nurse Practitioner, administered no treatment. However,

Gates's complaint specifically refers to his medical records, which are attached to the complaint as an exhibit and which show that he was consistently seen by FCI Memphis medical staff during the months he alleges he was a pretrial detainee, including a health screen he received in July 2017. (ECF No. 1-6 at PageID 56 (Oct. 2, 2017), 57 (Sept. 13, 2017), 59 (Sept. 5, 2017), 70 (Aug. 23, 2017), 75 (Aug. 11, 2017), 78 (July 27, 2017 (health screen)), 84 (Aug. 2, 2017 (full physical)).) Defendant Gaia either treated Gates or reviewed several of the reports of Gates's medical visits. (*Id.* at PageID 61, 64, 72, 77.) Gates does not allege those attached medical records are inaccurate; therefore, he fails to state a claim of deliberate indifference against Defendant Gaia.

For the foregoing reasons, the complaint is subject to dismissal in its entirety for failure to state a claim.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds that Gates should be given an opportunity to amend his complaint.

In conclusion, Gates's complaint is DISMISSED for failure to state a claim on which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b(1). Leave to amend, however, is GRANTED. Any amendment must be filed within twenty-one days after the date of this order.

Gates is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings. The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Gates fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE